Mr. Markson and Mr. Byrd, can you both hear me? Yes, your honor. Yes, your honor. Okay, before I let the clock start, just a heads up, you know, this is a difficult circumstance for everyone because we're just on the phone and you can't see us. So, I ask you to listen carefully for when the judges start talking. There's a little bit of a lag time and I know it's difficult, but just try to keep a heads up, okay? Yes, your honor. Understood, your honor. Okay, Mr. Markson, you're reserving five minutes. When that tone goes off, I'll try to let you know if you haven't heard it. And if you want to use up that time, that's up to you, but I'll try to help you reserve it if you want to. Thank you, your honor. Okay, you can go ahead and start now. May it please the court, this is Ernst Markson for Petitioner Yolanda Reed. Affirming the board in this case would lighten agency's task on the initial appeal, whereas here a disciplined employee suffers from mental health and memory issues as well as a passage of time. Yes, your honor. This is Judge Wallet. I have some questions about Dr. Branneman. Yes. On page 18 of the blue brief, you say, I'm quoting now, Dr. Timothy Branneman, who evaluated Ms. Reed's files, concluded that these symptoms and Ms. Reed's state of mind during her dark period, internal quote from him, interfered with her ability to attend to the notification of being terminated for AWOL in a timely manner, and possibly to fully understand the implications of those notifications, close internal quote, close quote. Isn't Dr. Branneman's statement inconclusive because he said that Ms. Reed's condition possibly interfered, and proof? And if not, why not? Well, your honor, I would argue that it ties together, it creates a condition for the other evidence that exists in the case to be considered with greater weight, because he's giving his professional forensic assessment about the plausibility of Ms. Reed's state of mind at the time. He says, he uses the word possible. He doesn't say more likely than not. How can we even pay attention to this? Well, your honor, I think this is within the standards of what a forensic assessment does. I think it would be, he would be unprofessionally giving an opinion if he were to be more resolute in his opinion than this, because anytime a forensic examiner does, or I'm sorry, a forensic psychologist does an assessment of something of a state of mind that occurred so many years ago, by their very nature, they have to give a hedged assessment, and that's what he gave in this particular case. On page 22 of the Blue Brief, you say, I'm quoting, the A.J.'s determination that Dr. Branneman was not credible is an abuse of discretion and is unsupported by the evidence, close quote. I'm correct that Dr. Branneman didn't appear before the MSPB to testify. I know that, and as our president Hambush, the treasury holds, the MSPB's determination of witness credibility is virtually unreviewable. Well, that's probably true as to live witnesses. On this, the only thing we can rely on is the provision of a competent and cognizable piece of evidence by I suppose perhaps I'm misunderstanding you. Are you saying that a forensic report of this sort, by its very nature, is not admissible? Do you have any foundation? Because I'm very concerned about that, possibly. Yeah, and I suppose I certainly would be, too, from the other side. I mean, in my view, establish the foundation by performing the psychological assessments of Ms. Reed, by interviewing Ms. Reed, reviewing the records in the case, and obviously by his own education and training. In my view, in the petitioner's view, that establishes the foundation for this letter to be considered by an administrative judge in a case like this and to be given weight. On page 26 of the Blue Brief, you say, again I'm quoting, on one hand, Ms. Reed's first-line supervisor trusted Ms. Reed to do her job right up until her removal, and on the other hand, the deciding official decided that Ms. Reed could not be trusted and had to be fired. I find that somewhat misleading, and I want you to tell me why it isn't, because we know that the informed about the investigation against Ms. Reed until she was terminated. So how is that relevant evidence? Well, I believe it's relevant evidence because that supervisor is, I mean, I suppose, I suppose, well, first off, I'd like to say the agency as a whole understood that Ms. Reed was able to continue in her position right up until her removal, including the proposing and deciding officials. I mean, the deciding official in this case heard her case in June and July of 2019, and she was remained in her position all the way through almost the end of September, as I recall. And so, yeah, I think the first-line supervisor continued to trust Ms. Reed, but I guess, I suppose, I don't see it the way you do. Okay, the MSPB determined that after her termination from Social Security, Ms. Reed applied for unemployment benefits. That wasn't mentioned in the blue brief. Don't you think it's relevant? I mean, she had the knowledge to go ahead and do that. Well, with all respect, Ron, I don't believe it's particularly relevant. I also know that she had applied for disability as well. She was aware that she had been terminated, and she disclosed that to the investigators, you know, openly. She said that she had been terminated because she couldn't go to work. And so, you know, the operative facts in this particular case were disclosed. The mistake and the key issue on which our substantial evidence arguments are based is, you know, whether this incorrect statement that she was not AWOL was lacking candor when she had made disclosures to the investigators that she had indeed been terminated, and that she'd been terminated for not going to work. Counsel, this is Judge Hughes. I just want to ask you about this one point, because it seems critical, and it seems like the MSPB relied on it. She didn't just volunteer that she'd been terminated for not going to work. She affirmatively said, I wasn't terminated for AWOL. I don't have the words correctly, but she affirmably addressed the AWOL issue. If you thought you had been terminated for not going to work, why would you address this other specific charge, which was the actual basis for her termination? You know, I don't know the answer to that question, Your Honor, and I don't think the petitioner had any good reason when she testified to it. That was one of the biggest issues in our case, of course, and that's why when I... Well, isn't the problem the board thought she was making a false statement, and didn't believe her, and therefore found her testimony not credible? And if that's the case, how do we review any of that, given our very deferential standard of review and credibility determinations? Well, I think a lot of it comes down to the faulty analysis of the mental health issues that were in play here. In Smith v. GSA, that's where this court establishes that a faulty analysis can be a stepping stone to a finding that... But again, let me interrupt you, because it seems to me you're talking about two different issues. I don't see any allegations that she was suffering from mental health issues that prevented her from being truthful to the investigators. It was the mental health issues sounding around her removal. But if she was not suffering from mental health issues that prevented her from being truthful to the investigators, then why would she volunteer a statement that she wasn't removed for being able, when all she needed to do was tell the investigators what she thought was the truthful story? Well, Your Honor, that was a mistake that I know that she wishes she could take back, because in retrospect, she admitted to the board that she said those words, and they were, in fact, incorrect. Well, I get it. I mean, you have your view of the facts, and the government and the board have their view of the facts. And one is, it was a simple mistake, and one is that it was a lie. And doesn't that just come down to the board's interpretation of her testimony? And did she testify lie? She did, yes, Your Honor. I don't know how we get around the fact that the board is in the best position to listen to her make that testimony and determine whether she's telling the truth or not. And the board said she wasn't. Well, I believe it comes down to the faulty analysis, in particular with respect to the judge saying that the judge not crediting the mental health evidence that she had memory problems at the time. She received the AWOL letter. She had decompensation issues where she was failing to attend to basic life needs and wasn't even going to work. Obviously, she was terminated for not going to work because she literally wasn't showing up to work for many, many months. And so her mental health issues were so severe.  Mr. Martin? Yes, Your Honor. Just so you know, you're under your rebuttal time. Yes, Your Honor. I'll reserve the rest of time for rebuttal unless the court has any particular questions now. Okay, let's hear from the government. Mr. Byrd? Yes, good morning, Your Honor, and may it please the court. At base in this appeal, Ms. Reed inappropriately seeks to have this court reweigh the evidence. Instead, as we detailed in our brief, this court should affirm the board's decision sustaining DHS's decision to remove Ms. Reed for two reasons. First, substantial evidence supports the board's decision here sustaining the lack of hand or charge because Ms. Reed was not fully candid during the 2018 investigatory interview. The board did not ignore the medical evidence that Ms. Reed had proffered to the board, but instead simply found that evidence to be of little probative value when weighing it. Second, the board's decision demonstrates that the administrative judge identified and balanced all relevant factors in determining that the penalty of removal was reasonable under the circumstances. The administrative judge, contrary to Ms. Reed's assertion, did not fail to consider relevant mitigating evidence, including evidence concerning her mental health, but rather simply found that evidence not to warrant overturning the penalty. Turning to the charge of lack of candor, as this contains two elements, giving incorrect or incomplete information and doing so knowingly. On the incomplete information point, as Mr. Martson pointed out, Ms. Reed does not contest that the information she gave regarding the reason for the termination was incorrect, and that was that she stated that she was not let go for being AWOL when, in fact, she was fired by the Social Security Administration for being AWOL. Regarding whether she gave that incorrect information knowingly, substantial evidence supports the board's finding that Ms. Reed knowingly did provide that information incorrectly. After fully considering the evidence and assessing the credibility of testifying witnesses, including Ms. Reed, the board concluded that it was simply improbable that her medical condition caused Ms. Reed not to have remembered the reason for her SSA termination during the 2018 interview. As the administrative judge explains in his opinion, several facts support this conclusion, including Ms. Reed's testimony before the board that she had, in June 2015, at the time of the termination, gotten the gist of having gotten let go for not returning to work from the SSA. Additionally, the year before the November 2018 investigatory interview, in October 2017, Ms. Reed had an interview with the Office of and she recounted then the reason she had been let go by the SSA and that was for her failure to return to work when her supervisor was no longer approving her leave requests. Additionally, as this court discussed with Mr. Martson, it was Ms. Reed who volunteered the term AWOL during the 2018 interview and the board, as a credibility matter, determined that that further discredited her credibility before the board. Turning to the medical opinions that were before the board, the administrative judge's decision evidences that he extensively analyzed and weighed those opinions that the parties had presented against other contradictory evidence in the record. As part of this inquiry, the administrative judge explained why he found, in accordance with this court's precedent in Ball, that the medical opinions proffered by Ms. Reed about her medical condition played a role in her inability to, or her lack of, candor in that November 2018 interview. The board judge also then explained why, on the other hand, he found the clinician proffered by the agency to be credible in light of his evaluation of the evidence and conclusions that Ms. Reed's psychologist from November 2019 had proffered to the board. In the end, the administrative judge simply was not persuaded that Ms. Reed's mental health in 2015, or 2018 for that matter, caused her not to remember the reason for her termination from the SSA in June 2015. On appeal, by continuing that the administrative judge erred by not granting more weight to the medical opinions that Ms. Reed proffered, as we detail in our brief, Ms. Reed simply inappropriately asked this court to re-weigh the evidence, which is not its function on a substantial evidence review standard. Regarding the penalty, briefly, Your Honor, this court should not disturb the penalty determination because removal was in the bounds of reasonableness under the circumstances in both the agency and the board consider the relevant mitigating factors. Ms. Reed broadly contends that the evidence regarding her mental health, however, as the administrative judge's opinion evidences, both the deciding official and the board considered this evidence, but simply concluded when weighing it that it was not, it had little probative value and did not warrant overturning the penalty, which was within the bounds of reasonableness. Is that it from the government, Mr. Byrd? If there are no further questions, Your Honor, at this point I can conclude. We respectfully request that the court affirm the MSPB's decision. Thank you. Thank you, Mr. Byrd. Mr. Markson? Yes, sure. Thank you, Your Honor. Yes, even if this court does affirm the board in charge of lack and candor, it's petitioner's contention that the administrative judge should have performed an independent penalty determination in this case, not only in light of new medical evidence, much of which was not specifically mentioned in the administrative judge's opinion, but but is contained in the appendix, but also because he should not have given deference to the agency's penalty determination because the agency deciding official failed to consider or at least adequately considered two double factors, including that he failed to truly consider lesser sanctions and second, that he failed to consider Ms. Reed's continued satisfactory board performance for the approximately 10 months after she gave her interview in which she purportedly lacked candor. Going back to the issue of the failure to consider lesser sanctions in the appendix. Yes, Your Honor? Mr. Markson, Douglas doesn't mandate that all factors be considered in every case without regard to their relevancy, right? That's correct, and petitioner contends that these are two of the most relevant elements and they were not considered or not adequately considered. Well, the AJA found that Ms. Reed's failure to take responsibility or show remorse for a lack of candor demonstrated the significance of her misconduct and thus weighed heavily, I'm quoting, weighed heavily against her rehabilitation potential. So the relevancy of considering a lesser sanction is diminished by her limited rehabilitation potential as a Federal Service employee, right? And I'm saying look at LeChance, for example. Yeah, as a general proposition, I agree, Your Honor. I believe that again in this case, the main issue is that there is deference to the agency deciding official who testified on cross-examination at appendix 550 that he did not give serious consideration to lesser forms of penalty such as a suspension. And so when there's no serious consideration given, then it's tantamount to not considering this factor at all. And again, in this case, I believe that that was relevant given the significant mental health issues, which I know I don't have time to go through all of them, but many of them were not mentioned by the administrative judge and they are contained in the record. You know, there's evidence of severe mental health issues going back even just within the record to 2014, 2015, 2019, and again with Dr. Branneman's report and assessment as well. And many of those were not discussed and by either the agency or the administrative judge. Anything further? Oh yes, Your Honor. Just that, you know, as you all are likely aware, the medical evidence, when it exists, is often given significant weight. And again, here it was minimized. It was not given significant weight and there was no serious consideration of the lesser penalties, especially in light of the medical evidence, that by itself is significant error. Any further questions from the judges, I can conclude. Okay, thank you very much. The matter will stand submitted. Thank you, Your Honor. Thank you to both counsel.